ROLLER *v.* ROLLER.

4-8690                                                  216 S. W. 2d 399

Opinion delivered January 10, 1949.

*W.. B. Wall* and *Hugh M. Bland*, for appellant.

*J. Clib Barton, G. C. Hardin* and *Bruce H. Shaw,* for appellee.

MINOR W. MILLWEE, Justice. Appellant, Walter E. Roller, was plaintiff in the chancery court in a suit

against his wife, Grace Roller, for a divorce and an accounting of funds and property which he alleged the defendant obtained from him by fraud and undue influence while he was in a weakened mental condition. The divorce action was dismissed on motion of defendant on the ground of plaintiff's nonresidence, but an amended complaint was filed on the accounting feature.

Plaintiff alleged that the parties purchased a home in Monette, Missouri, with funds accumulated through their joint efforts; that in 1945 or 1946 plaintiff suffered a stroke which so affected his mental faculties as to make him subject to the dictates of defendant who fraudulently obtained a deed to the Monette property from plaintiff and later sold the property for $10,000 and converted the proceeds to her own use; that said proceeds, together with other funds and securities, were held by defendant as trustee for plaintiff. There was a prayer for an accounting and judgment against defendant for plaintiff's equitable share of the property.

The answer contained a general denial and further alleged that plaintiff and defendant entered into a separation agreement in August, 1945, dividing their property equitably between themselves and that they lived separate and apart for approximately a year thereafter; that in October, 1947, the parties had a further and final settlement of their financial difficulties; and that funds in possession of defendant were her separate property and plaintiff had no interest therein.

The chancellor found the issues in favor of defendant and dismissed plaintiff's amended complaint for want of equity.

For reversal of the decree it is insisted that the court erred in refusing to declare a resulting trust in favor of plaintiff in the proceeds of the sale of the Missouri property and other funds held by defendant. It is urged that the parties never entered into a property settlement or, if so, that same was cancelled by reconciliation and that plaintiff is entitled to an accounting of his share of said property.

At the time of their marriage in 1933, both parties had been married previously. Defendant resided in the city of Fort Smith, Arkansas, when her first husband died leaving her $8,000 in insurance and a home in Ft. Smith. Shortly thereafter she moved to Oklahoma City where she bought a grocery store which she was operating at the time of her marriage to plaintiff. Plaintiff was employed as a railway mail clerk and owned a grocery store in Monette, Missouri, which was being operated at a loss. Shortly after their marriage the parties moved to Monette, Missouri, and defendant took charge of the grocery business which was later sold and the proceeds used in part payment of the purchase price of a home. The balance of the purchase price was eventually paid through the joint efforts of the parties who at all times maintained a joint bank account. They also jointly acquired government savings bonds which were kept in their lock box at the bank.

In 1944, plaintiff retired from the railway mail service on a pension of $108 per month. Shortly prior to August, 1945, plaintiff executed a deed directly to defendant for the Monette property. The property was owned as an estate by the entirety and on the advice of counsel the parties, on August 25, 1945, executed a deed to a third person who deeded the property back to defendant. According to the testimony on behalf of defendant, this deed was executed as a part of a property settlement which was suggested and dictated by the plaintiff. At the same time the parties cancelled and revoked a joint will in which each was made the beneficiary of the other.

Defendant testified that in accordance with the suggestion of plaintiff, and as a part of the separation agreement, she delivered to plaintiff $1,000 in bonds and $1,000 in cash which she obtained from their lock box and retained $2,000 in bonds for herself; that plaintiff also retained four pension checks which were uncashed at the time of the agreement; that plaintiff informed her that he was soon leaving and that she would never hear from him again.

The testimony of defendant as to the separation agreement was corroborated by that of her sister and a Monette attorney who represented both parties in the drafting of the deeds and revocation of the joint will. It is further corroborated by the fact that plaintiff later changed his life insurance policies by making his son by a former marriage the beneficiary in place of defendant.

Defendant remained in Monette for six months without hearing from plaintiff and then sold the home for $10,000 and moved to Tennessee where she joined a daughter in the grocery business. She testified that plaintiff came to Tennessee in July, 1946, and requested that she obtain a divorce from him which she refused to do. Plaintiff returned to Florida where he had resided since October, 1945. After some correspondence between the parties with reference to a reconciliation, plaintiff returned to Tennessee in October, 1946. There is little dispute as to the agreement under which they decided to resume cohabitation. Plaintiff was to help in the store and at the end of one year, if it was agreeable to both parties, they would go back on a "50-50 basis"; that is, each party would contribute his or her property to a joint account as they had done prior to the separation.

The parties remained in Tennessee until March, 1947, when defendant sold her interest in the store to her daughter. Plaintiff and defendant then made several trips to points in Arkansas, Texas, California and Oregon looking for a new location, each contributing to the expenses of such trips.

In the summer of 1947, plaintiff contracted encephalitis which seriously impaired his mental faculties for a time. He was in a hospital for a month. The parties then returned to Ft. Smith, but again separated and plaintiff then instituted this suit. Each party blamed the other for the final separation, but it is undisputed that no agreement was ever reached by which they would resume the joint account arrangement. When plaintiff left the defendant, she gave him $320.16 which represented the balance of a check for $590.50 he had given her to pay his hospital and medical bills in Oregon.

Plaintiff testified that the deed to the Monette property was executed because he and his wife became alarmed about a claim of his sister in the amount of $400 for nursing plaintiff some 15 years prior to the execution of the deed. It is undisputed that this claim was long since barred by the statute of limitations and defendant emphatically denied that it had anything to do with the execution of the deed.

Plaintiff also testified that the trip to Florida in October, 1945, was occasioned by ill health and with the understanding that defendant would hold the home property for him until his return. This testimony was also denied by defendant whose testimony is corroborated by the facts and circumstances heretofore mentioned. The preponderance of the evidence is to the effect that plaintiff was in full possession of his mental faculties prior to the attack of encephalitis in 1947.

The burden was upon plaintiff to prove the fraud of the defendant in the execution of the deed of August, 1945. It is also well settled that a resulting trust such as plaintiff seeks to prove here must be established by clear, cogent and convincing evidence. *Harbour* v. *Harbour,* 207 Ark. 551, 181 S. W. 2d 805. We have also frequently held that where the husband purchases and pays for lands making the deeds therefor in his wife's name, the presumption is that his money thus used was intended as a gift to her and the law does not imply an obligation on her part to refund the money or to hold the property in trust for him. *Harbour* v. *Harbour,* 103 Ark. 273, 146 S. W. 867.

The plaintiff failed to prove fraud in either the execution of the deed to defendant in August, 1945, or the property settlement made between the parties at that time. Nor is there sufficient evidence to show that such settlement was ever changed or that they thereafter resumed the joint account arrangement. The evidence is also insufficient to establish a resulting trust in his favor under the clear and convincing rule. It follows that the chancellor correctly dismissed the complaint and the decree is accordingly affirmed.